# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SIERRA CLUB<br>2101 Webster St., Suite 1300<br>Oakland, CA 94612, | ) ) ) ) | |
| *Plaintiff*, | ) ) ) | Civil Action No. _____ |
| v. | ) ) | |
| GINA McCARTHY, Administrator, U.S.<br>Environmental Protection Agency, in her<br>official capacity,<br>1200 Pennsylvania Ave., NW<br>Washington, DC 20460, | ) ) ) ) ) ) | **COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF** |
| *Defendant*. | ) ) ) | |

## INTRODUCTION

1.      This is a suit to compel the Administrator of the United States Environmental Protection Agency ("EPA") to take certain actions mandated by the Clean Air Act ("the Act"), 42 U.S.C. §§ 7401-7671q, to protect public health and the environment from the hazardous emissions of two particular categories of solid waste incinerators. Failure to complete these mandatory actions allows sources in these categories to either escape regulation entirely or to continue operating under regulations that are over a decade outdated. The Administrator has missed the statutory deadlines to promulgate a federal implementation plan for EPA's standards for commercial and industrial solid waste incineration units ("CISWI") and for EPA's standards for other categories of solid waste incineration units ("OSWI"). The Administrator has also missed the statutory deadline to review, and in accordance with §§ 7411 and 7429 of the Act, revise EPA's standards for OSWI units. These deadlines are listed in the tables below.

| Table A: Mandatory Deadlines Under the Clean Air Act | | | |
|---|---|---|---|
| Source Category | Date Of Promulgation | Duty | Deadline For Federal Action |
| 1.   Commercial and Industrial Solid Waste Incineration Units, 76 Fed. Reg. 15,704 (codified at 40 C.F.R. Part 60, Subparts CCCC and DDDD). | Mar. 21, 2011 | Promulgate FIP, pursuant to § 7429(b)(3). | Mar. 21, 2013 |
| 2.   Other Solid Waste Incinerators, 70 Fed. Reg. 74,870 (codified at 40 C.F.R. Part 60, Subparts EEEE and FFFF). | Dec. 16, 2005 | Promulgate FIP, pursuant to § 7429(b)(3). | Dec. 16, 2007 |
| 3.   Other Solid Waste Incinerators, 70 Fed. Reg. 74,870 (codified at 40 C.F.R. Part 60, Subparts EEEE and FFFF). | Dec. 16, 2005 | Review and revise, pursuant to § 7429(a)(5) | Dec. 16, 2010 |

2.      Due to the Defendant's failures to act, Sierra Club ("Plaintiff") seeks both a determination that the Defendant's failures to perform the actions required by 42 U.S.C.

§ 7429(b)(3) and § 7429(a)(5) violate the Clean Air Act, and an order to compel the Defendant to take each required action in accordance with an expeditious deadline set by this Court.

## JURISDICTION AND VENUE

3.      This action arises under the Clean Air Act, 42 U.S.C. § 7429(a)(5), (b)(2). This Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604(a)(2), 28 U.S.C. § 1331, and 28 U.S.C. § 1361. This Court may order the Administrator to perform the requisite acts and duties, may issue a declaratory judgment, and may grant further relief pursuant to 42 U.S.C. § 7604(a); the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202; and 28 U.S.C. § 1361. Plaintiffs have a right to bring this action pursuant to the Clean Air Act, 42 U.S.C. § 7604(a)(2); 28 U.S.C. § 1361; and the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

4.      By certified letter to the Administrator posted on October 13, 2016, Plaintiff gave notice of this action as required by 42 U.S.C. § 7604(b)(2) and 40 C.F.R. §§ 54.1-.3.

5.      Venue is vested in this Court under 28 U.S.C. § 1391(e) because the Defendant, EPA Administrator Gina McCarthy, resides in this district.

## PARTIES

6.      Plaintiff Sierra Club is a nonprofit corporation organized and existing under the laws of the State of California, with its headquarters located in Oakland, California. Sierra Club brings this action on behalf of itself and its members. A national organization dedicated to the protection of public health and the environment, including clean air, Sierra Club has more than 630,000 members who reside in all 50 states and the District of Columbia.

7.      Defendant Gina McCarthy is the Administrator of the EPA. In that role, she is charged with the duty to uphold the Clean Air Act and to take required regulatory actions according to the schedules established therein.

## LEGAL FRAMEWORK

8.     Congress wanted the Clean Air Act "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). Congress found the Act to be necessary in part because "the growth in the amount and complexity of air pollution brought about by urbanization, industrial development, and the increasing use of motor vehicles, has resulted in mounting dangers to the public health and welfare, including injury to agricultural crops and livestock, damage to and the deterioration of property, and hazards to air and ground transportation." *Id.* § 7401(a)(2). A "primary goal" of the Act is "pollution prevention." *Id.* § 7401(c).

9.     The uncontrolled burning of solid waste releases a significant amount of toxic air pollution. Accordingly, § 7429 states that the Administrator "shall establish performance standards and other requirements" for solid waste incineration units, including "numerical emissions limitations" for "particulate matter (total and fine), opacity (as appropriate), sulfur dioxide, hydrogen chloride, oxides of nitrogen, carbon monoxide, lead, cadmium, mercury, and dioxins and dibenzofurans." *Id.* § 7429.

10.     The performance standards established under § 7429 must also include certain monitoring and operator training requirements. *Id.* § 7429(c), (d).

11.     Section 7429 subdivides solid waste incinerators into several categories. For each category, Congress set a deadline by which EPA had to promulgate standards. *Id.* § 7429(a)(1). The categories are: municipal waste combustors with capacity greater than 250 tons per day; municipal waste combustors with capacity less than or equal to 250 tons per day; units combusting hospital waste, medical waste, or infectious waste; and units combusting commercial

or industrial waste. *Id.* § 7429(a)(1)(A)-(D). Lastly, § 7429(a)(1)(E) requires the Administrator to publish "a schedule for the promulgation of standards" for "other categories of solid waste incineration units." Having done so, the Administrator then was obligated to meet that deadline and publish performance standards for OSWI, as well.

12.     For each category of solid waste incinerator, the Administrator must publish emissions standards that include both "new source performance standards" for new or modified sources and emissions "guidelines" for existing sources. *Id.* § 7429(a), (b). New sources are those which commence construction after the date new standards are proposed. *Id.* §7429(g)(2). Modified sources are those which commence a significant modification after the effective date of a new standard. *Id.* § 7429(g)(3). Existing sources are those sources built prior to the proposal date and which have not been modified any time after the effective date. *Id.* § 7429(g)(4).

13.     Emissions guidelines (for existing and modified units) are implemented differently than new source performance standards. When new standards are promulgated, states with existing units covered by the standards have one year from the date standards are promulgated to submit a state implementation plan ("SIP") to EPA for approval. *Id.* § 7429(b)(2). This SIP implements the emissions guidelines applicable to existing and modified sources. If a state has no existing units in the category, then EPA requires that state to instead submit a negative declaration by the same date. *E.g.*, 40 C.F.R. § 60.2510; *id.* § 60.2982. Should any state submit neither an approvable SIP nor a negative declaration, then § 7429(b)(3) dictates that the Administrator "shall develop, implement and enforce" a federal implementation plan. 42 U.S.C. § 7429(b)(3).

14.     The Administrator must develop, implement, and enforce this federal implementation plan "within 2 years after the date on which the Administrator promulgated the

relevant guidelines." *Id.* In other words, the Act gives the Administrator one year after the due

date for state SIPs to develop the federal implementation plan.

15.     The federal implementation plan developed under § 7429(b)(3) "shall assure that

each unit subject to the plan is in compliance with all provisions of the guidelines not later than 5

years after the date the relevant guidelines are promulgated." *Id.*

16.     The federal implementation plan will apply automatically to "existing solid waste

incineration units within any category located in any State which has not submitted an

approvable plan … with respect to units in such category …." *Id.* § 7429(b)(3); *see also, e.g.*, 40

C.F.R. § 62.14515 ("If your CISWI unit is located in a State that does not have an EPA-

approved State plan or your State's plan has not become effective," then EPA's federal

implementation plan for the 2000 CISWI emissions guidelines "applies to your CISWI unit until

the EPA approves a State plan that covers your CISWI unit and that State plan becomes

effective.").

17.     The emissions guidelines for existing and modified sources must be implemented

through a SIP or a federal implementation plan in order to have effect.

18.     Section 7429 also requires that emissions standards for every category be

periodically reviewed and revised. Specifically, "[n]ot later than 5 years following the initial

promulgation of any performance standards and other requirements … applicable to a category

of solid waste incineration units," and, additionally, "at 5 year intervals thereafter," the

Administrator "shall review, and in accordance with [§ 7429 and §] 7411 … revise such

standards and requirements." *Id.* § 7429(a)(5). This applies both to new source performance

standards and to existing source emission guidelines. *Id.*

19.     When standards are revised, federal and state implementation rules must be updated accordingly. Promulgation of revised standards triggers a new implementation duty on the states. As before, if any states fail to carry out this duty, then EPA must promulgate a federal implementation plan for its revised standards. *Id.* § 7429(b)(3).

20.     The Act guarantees citizens a right to present their views and information to EPA and have them considered by the agency. The Act applies § 7607(d) rulemaking requirements to "the promulgation of any requirement for solid waste combustion under section 7429 of this title," as well as "the promulgation or revision of any standard of performance under section 7411 of this title." *Id.* § 7607(d)(1)(D), (C). Section 7607(d) requires EPA to provide public notice of proposed rulemaking accompanied by a statement of its basis and purpose, which must include the factual data on which the proposed rule is based and the methodology used in obtaining and analyzing the data. *Id.* § 7607(d)(3). Section 7607(d) also requires EPA to allow any person to submit written comments, data, or documentary information, and to present data, views, or arguments orally. *Id.* § 7607(d)(5). EPA must consider such comments, data, and arguments submitted, and respond to each of the significant comments, criticisms, and new data when promulgating the final rule. *Id.* § 7607(d)(6)(B).

21.     When developing federal implementation plans, EPA regulations require the Administrator to include "an inventory of all designated facilities, including emission data for the designated pollutants and information related to emissions …." 40 C.F.R. § 60.25(a).

22.     Federal implementation plans must also include provisions for "monitoring the status of compliance with applicable emission standards," including "[l]egally enforceable procedures for requiring owners or operators of designated facilities to maintain records." *Id.* § 60.25(b); *see also* 42 U.S.C. § 7429(c) (requiring monitoring of incinerators). EPA also

requires that regulated sources under a federal implementation plan "periodically report to the State information on the nature and amount of emissions from such facilities, and/or such other information as may be necessary to enable the State to determine whether such facilities are in compliance with applicable portions of the plan." 40 C.F.R. § 60.25(b). Information reported to the state in this way "shall be correlated with applicable emission standards (see § 60.25(a)) and made available to the general public." *Id.* § 60.25(c).

23.     Additionally, federal implementation plans must require the States where that plan is in effect to "submit reports on progress in plan enforcement to the Administrator on an annual (calendar year) basis …." *Id.* § 60.25(e). These reports must include any enforcement actions initiated against covered facilities and technical reports on performance testing conducted at covered facilities, among other important information. *Id.* § 60.25(f).

24.     Lastly, § 7429 requires that units in each category of incinerator operate pursuant to a permit under the Title V program. 42 U.S.C. § 7429(e). Permits under this program are required to undergo public notice and comment during the application process. *Id.* § 7661a(b)(6). All permits are publicly available and include enforceable emissions standards for each regulated emission sources at a permitted facility. *See generally id.* §§ 7661a (permit programs), 7661c (permit requirements and conditions).

### FACTS

25.     Combustion of solid waste causes the release of many toxic air pollutants, some of which exist in the waste feed material and are released unchanged during combustion and others of which are generated as a result of the combustion process itself. 75 Fed. Reg. 31,938, 31,941/3 (June 4, 2010). These pollutants include "particulate matter (PM); metals, including lead (Pb), cadmium (Cd) and mercury (Hg); toxic organics, including chlorinated dibenzo-p-

dioxins/dibenzofurans (dioxin, furans); carbon monoxide (CO); nitrogen oxides ($NO_x$); and acid

gases, including hydrogen chloride (HCl) and sulfur dioxide ($SO_2$)." *Id.*

26.     CISWI include any facility which combusts any solid waste material from

commercial or industrial establishments. *Natural Res. Def. Council* v. EPA, 489 F.3d 1250, 1255

(D.C. Cir. 2007). Examples include incinerators for disposing of waste; energy recovery units

that burn solid waste; waste-burning cement kilns; burn-off ovens that combust residual

materials off racks, parts, drums, or hooks; and other industrial and commercial units that

combust solid waste. *See* 75 Fed. Reg. 31,941/3.

27.     CISWI emit a wide array of highly toxic pollutants, including over 1,560 pounds

of mercury, over 46,500 tons of nitrogen oxides, over 38,600 tons of sulphur dioxide, and over

2,870 tons of particulate matter each year. *Id.*; Memorandum from Eastern Research Grp., Inc. to

Toni Jones, U.S. Environmental Protection Agency, tbl.1 (Nov. 26, 2012), EPA-HQ-OAR-2003-

0119-2660.

28.     EPA presently defines "other solid waste incinerators" to include "institutional

waste incineration units" and "very small municipal waste combustion units." 70 Fed. Reg. at

74,870/3. EPA has also said that it plans to regulate "pathological waste incinerators" as OSWI.

75 Fed. Reg. 31,948/1. Institutional waste incinerators include waste burning incinerators at

correctional institutions, primary and secondary schools, camps, national parks, military bases,

laboratories, universities, colleges, and civic associations. 70 Fed. Reg. at 74,870. Very small

municipal waste combustors are solid waste combustion units owned by state, local, or tribal

governments which burn up to 35 tons per day of municipal waste from the general public or

from residential, commercial, institutional, and industrial sources. *Id.* EPA estimates that

institutional waste incinerators and very small municipal waste incinerators emit over 260 tons of

particulate matter, over 860 tons of hydrogen chloride, over 600 tons of sulfur dioxide, and over 460 tons of nitrogen oxides ever year. Memorandum from Mary Johnson, ESD, to Daniel Mussatti, Senior Economist, U.S. Environmental Protection Agency at 4 (Nov. 18, 2005), EPA-HQ-OAR-2003-0156-0101. Pathological waste incinerators, some of which burn thousands of pounds per hour of waste materials, produce significant air pollution as well.

29.     EPA has recognized that the air pollutants emitted by CISWI and OSWI units can cause serious acute and chronic human health effects. Breathing some of these pollutants can cause cancer. EPA has recognized that carcinogens have no safe level of human exposure. *Natural Res. Def. Council v. EPA*, 824 F.2d 1211, 1215 (D.C. Cir. 1987) (observing that EPA determined "that known and probable carcinogens have no safe threshold"); *see also* S. Rep. No. 101-228, at 175 (1989), *reprinted in* 1990 U.S.C.C.A.N. 3385, 3560 ("Federal Government health policy since the mid-1950s has been premised on the principle that there is no safe level of exposure to a carcinogen"). In addition, breathing some of these pollutants can cause severe or acute harm from short-term exposure.

30.     Lead is a persistent, bioaccumulative, and toxic heavy metal that poses a danger to human health and ecosystems. Lead exposure can lead to increased blood pressure, decreased kidney function, and reproductive problems. In children, who are most vulnerable to the impacts of lead, exposure can have lifelong impacts, including slowed growth and behavioral and learning problems. EPA, *Basic Information about Lead Air Pollution*, https://www.epa.gov/lead-air-pollution/basic-information-about-lead-air-pollution (last updated Mar. 30, 2016). There is no safe level of human exposure to lead. Nat'l Inst. of Envtl. Health Scis., *Lead*, http://www.niehs.nih.gov/health/topics/agents/lead (last updated Dec. 6, 2016). Additionally, lead in the air is problematic because it can be inhaled as well as swallowed, since lead dust

settles on surfaces like soil, dust, and water and does not decay or decompose. EPA, *Lead in Outdoor Air*, https://www.epa.gov/lead/lead-outdoor-air (last updated Nov. 28, 2016). As lead accumulates in the environment, it can lead to decreased growth and reproductive rates in plants and animals and can negatively impact vertebrates' nervous systems. EPA, *Basic Information about Lead Air Pollution*.

31.     Exposure to mercury impacts the nervous system and can cause a range of effects from increased blood pressure, nausea, and vomiting to permanent brain or kidney damage. ATSDR, *Toxic Substances Portal - Mercury*, https://www.atsdr.cdc.gov/toxfaqs/TF.asp?id=113&tid=24 (last updated Mar. 12, 2015). EPA has determined that developing fetuses and young children are particularly susceptible to the effects of mercury exposure as mercury can impair the development of their brains and nervous systems, which in turn can impact their memory, attention, language, and fine motor skills. EPA, *Health Effects of Exposures to Mercury*, https://www.epa.gov/mercury/health-effects-exposures-mercury (last updated May 31, 2016).

32.     Exposure to particulate matter is harmful because these small particles can enter a person's lungs and bloodstream and cause an array of health problems, such as aggravated asthma, decreased lung function, and increased respiratory symptoms. EPA, *Health and Environmental Effects of Particulate Matter (PM)*, https://www.epa.gov/pm-pollution/health-and-environmental-effects-particulate-matter-pm (last updated July 1, 2016). Particulate matter can also contribute to environmental damage, reduce diversity in ecosystems, damage farm crops, deplete nutrients in soil, and alter the nutrient balance in bodies of water. *Id.*

33.     Sulfur dioxide is a pollutant that can have harmful effects on both human health and the environment. Sulfur dioxide exposure, even short-term exposure, can make breathing

difficult and harm people's respiratory systems and these effects are especially pronounced in children, the elderly, and asthmatics. EPA, *Sulfur Dioxide Basics*, https://www.epa.gov/so2-pollution/sulfur-dioxide-basics (last updated Aug. 16, 2016). EPA has also determined that sulfur dioxide can decrease the growth of trees and plants and damage their leaves. *Id.*

34.     Nitrogen dioxide is also linked to deleterious health impacts. Long-term exposure to nitrogen dioxide may contribute to the development of asthma. EPA, *Basic Information about NO2*, https://www.epa.gov/no2-pollution/basic-information-about-no2 (last updated Sept. 8, 2016). The presence of nitrogen dioxides in the atmosphere negatively impacts the environment too, as it contributes to nutrient pollution in coastal waters and interacts with other chemicals to form acid rain. *Id.*

35.     Inhalation of carbon monoxide lessens the amount of oxygen transported to the heart, which can be particularly harmful for those with heart disease who are already unable to fully transport oxygenated blood to their hearts. EPA, *Basic Information about Carbon Monoxide (CO) Outdoor Air Pollution*, https://www.epa.gov/co-pollution/basic-information-about-carbon-monoxide-co-outdoor-air-pollution (last updated Sept. 8, 2016).

36.     EPA considers cadmium a probable human carcinogen. EPA, Integrated Risk Information System: Cadmium at 5 (July 2015), https://cfpub.epa.gov/ncea/iris/iris_documents/documents/subst/0141_summary.pdf.

37.     Furans are a diverse class of pollutants and are reasonably anticipated to be a human carcinogen, as well. Nat'l Toxicology Program, 14th Report on Carcinogens, *Furan* at 1 (2016), https://ntp.niehs.nih.gov/ntp/roc/content/profiles/furan.pdf.

38.     Hydrogen chloride can lead to throat, eye, and skin irritation and long-term exposure can lead to respiratory problems. ATSDR, *Toxic Substances Portal - Hydrogen*

*Chloride*, https://www.atsdr.cdc.gov/toxfaqs/tf.asp?id=759&tid=147 (last updated July 27,

2015). *See also* EPA, Hydrochloric Acid (Hydrogen Chloride) Hazard Summary at 1 (Jan. 2000),

https://www.epa.gov/sites/production/files/2016-09/documents/hydrochloric-acid.pdf ("Chronic

(long-term) occupational exposure to hydrochloric acid has been reported to cause gastritis,

chronic bronchitis, dermatitis, and photosensitization in workers").

39.     Dioxins are highly toxic and their health effects include cancer, immune system

damage, and reproductive and developmental problems. EPA, *Learn about Dioxin*,

https://www.epa.gov/dioxin/learn-about-dioxin (last updated Dec. 14, 2016). Dioxin has also

been linked to "a number of other diseases, including type 2 diabetes, ischemic heart disease, and

an acne-like skin disease called chloracne." Nat'l Inst. of Envtl. Health Scis., *Dioxins*,

https://www.niehs.nih.gov/health/topics/agents/dioxins/ (last updated Dec. 13, 2016).

40.     Some populations face greater health harms from exposure to hazardous air

pollutants emitted from CISWI and OSWI units because they are not exposed only to one

pollutant, to one source, or through one route of exposure. Instead, they face combined and

synergistic effects from multiple pollutants, multiple pathways of exposure, and multiple

sources, all at once.

41.     The Administrator promulgated standards for CISWI units ("The 2011 CISWI

Standards") on March 21, 2011. 76 Fed. Reg. 15,704.

42.     The Administrator promulgated standards for OSWI units ("The 2005 OSWI

Standards") on December 16, 2005. 70 Fed. Reg. 74,870.

43.     If any states failed to submit either an approvable SIP or a negative declaration in

response to the 2011 CISWI standards, the Administrator was required to take final action to

fulfill her § 7429(b)(3) duty to promulgate a federal implementation plan for EPA's CISWI units no later than March 21, 2013. 42 U.S.C. § 7429(b)(3).

44.     If any states failed to submit either an approvable SIP or a negative declaration in response to the 2005 OSWI standards, the Administrator was required to take final action to fulfill her § 7429(b)(3) duty to promulgate a federal implementation plan for EPA's OSWI units no later than December 16, 2007. *Id.*

45.     The Administrator was required to take final action to fulfill her § 7429(a)(5) duty to review and revise EPA's OSWI standards by no later than December 16, 2010. *Id.* § 7429(a)(5)

46.     <u>Commercial and Industrial Solid Waste Incineration Units—Federal Plan</u>

a.     Some states have submitted neither an approvable SIP nor a negative declaration since the CISWI standards were promulgated on March 11, 2011.

b.     More than two years have passed since the Administrator promulgated the 2011 CISWI standards.

c.     The Administrator has not promulgated a federal implementation plan for CISWI units based on the 2011 CISWI standards. The current federal implementation plan for CISWI units was promulgated in 2003, to implement standards promulgated on December 1, 2000. *See* 68 Fed. Reg. 57,518 (Oct. 3, 2003), *codified at* 40 C.F.R. pt. 62, subpt. III.

d.     The Administrator has not published public notice of a proposed rule, and has not accepted comments, data, or argument on a proposed rule, nor has she responded to significant comments or new data, or issued a statement of basis and purpose for a final rule for the federal plan required by § 7429(b)(3) for CISWI units.

47. <u>Other Categories of Solid Waste Incineration Units—Federal Plan</u>

a.      Some states have submitted neither an approvable SIP nor a negative declaration since the OSWI standards were promulgated on December 16, 2005.

b.      More than two years have passed since the Administrator promulgated the OSWI standards.

c.      The Administrator has never promulgated a federal implementation plan for OSWI units.

d.      The Administrator has not published public notice of a proposed rule, and has not accepted comments, data, or argument on a proposed rule, nor has she responded to significant comments or new data, or issued a statement of basis and purpose for a final rule for the federal plan required by § 7429(b)(3) for OSWI units.

48. <u>Other Categories of Solid Waste Incineration Units—Review and Revise</u>

a.      More than five years have passed since the Administrator promulgated the OSWI standards on December 16, 2005.

b.      The Administrator has not yet reviewed or revised the OSWI standards pursuant to § 7429(a)(5).

c.      The Administrator has not published public notice of a proposed rule, and has not accepted comments, data, or argument on a proposed rule, nor has she responded to significant comments or new data, or issued a statement of basis and purpose for a final rule for revisions process required by § 7429(a)(5) for OSWI units.

**ALLEGATIONS OF INJURY**

49.     Plaintiff and its members have been, are being, and will continue to be harmed by the Administrator's failures to take the actions required by 42 U.S.C. § 7429(b)(3) and § 7429(a)(5) for the CISWI and OSWI categories of solid waste incinerators.

50.     Plaintiff's members live, work, travel, recreate, and engage in a wide variety of other activities near CISWI and OSWI units. Plaintiff's members suffer exposure to injurious air pollution and additional harms to their health, recreational, aesthetic, educational, professional, and other interests due to breathing and swallowing the air pollutants emitted by CISWI and OSWI units, and by other pathways of exposure as described in paragraphs 26-39, *supra*.

51.     Exposure to harmful air pollutants emitted by CISWI and OSWI units has adverse health effects which may include respiratory, neurological, developmental, and reproductive harm; damage to bodily organs and the central nervous system; and cancer, as well as other health effects described in paragraphs 26-39, *supra*.

52.     Plaintiff's members are concerned that they are exposed to these harmful air pollutants in the locations where they live, work, travel, recreate, and engage in other activities. These reasonable concerns about their increased exposure from such activities and other resulting harms from such exposure diminish their enjoyment of activities and areas they previously enjoyed or would like to continue to engage in or use and thereby harm their recreational, aesthetic, educational, professional, and other interests.

53.     Further, CISWI and OSWI units emit air pollutants that can damage surrounding wildlife, plants, waters, land, communities, and ecosystems, and thus also harm Plaintiff's members' recreational, aesthetic, educational, professional, and other interests in those wildlife, plants, waters, land, communities, or ecosystems. As detailed above, the hazardous air pollutants

emitted by CISWI and OSWI units include lead, particulate matter, and sulfur dioxide which are known to damage trees and wildlife, and to harm ecosystem and crop diversity. CISWI and OSWI units also emit nitrogen dioxide, which contribute to the formation of ground-level ozone pollution that also harms ecosystems by damaging plant species and adversely impacting wildlife habitat. These impacts make it more difficult for Plaintiff's members to observe, fish, cultivate, study, research, write about, or enjoy wildlife, plants, or ecosystems.

54.     Plaintiff and its members who live near OSWI units suffer additional harm because, although the vast majority of states never submitted an approvable SIP or negative declaration, there has never been a federal implementation plan promulgated. This inaction means that many OSWI are still operating without any regulation. Such sources are not being subjected to emissions limits, operator training requirements, monitoring requirements, recordkeeping requirements, reporting requirements, or permitting requirements. This significantly increases the amount of injurious air pollution to which Plaintiff's members are exposed.

55.     Plaintiff and its members are further denied important information that would be publicly available if a federal implementation plan for OSWI were developed and promulgated. This includes an inventory of OSWI units, and reports on these units' emissions and permitting documents for these units once the implementation plan became effective. Plaintiff and its members would use this information to work for stronger health and environmental protections; to educate members, supporters, and the public pursuant to their organizational missions; and to protect themselves and their families from hazardous air pollutants and affected land, water, and food. Denial of this information impairs Plaintiff's ability to provide information and services to its members to assist them in protecting their interests, hampers the ability of Plaintiff and its

members to take actions to protect their health and communities, and diminishes members'
enjoyment of activities in their daily life.

56.     Plaintiff and its members are also harmed by the Administrator's failure to
review, and in accordance with § 7429 and § 7411 revise, the OSWI standards. The current
OSWI standards exempt many types of OSWI units that the Act requires them to cover. This
includes incinerators like pathological waste incinerators, which EPA has expressly stated it
considers to be a class of OSWI. The current standards also exempt units that recover energy,
which the D.C. Circuit has found to be unlawful. *See Natural Res. Def. Council*, 489 F.3d at
1257-58 (holding that § 7429 must "unambiguously include among the incineration units subject
to its standards any facility that combusts any commercial or industrial solid waste material at
all," subject only to four, discrete exceptions outlined in the statute). Plaintiff's members who
live near these unlawfully exempted sources suffer the same types of harms described in the
preceding paragraphs of this section, based on increased exposure to toxic pollutants and lack of
information about these sources. However, these members' injuries will not be remedied until
EPA reviews and lawfully revises its OSWI standards.

57.     Plaintiff and its members further suffer harm because they are denied the
opportunity to submit written comments, data, and documentary information to EPA and to
present data, views, or arguments to EPA and have them considered by EPA and responded to as
part of the overdue § 7429(b)(3) and § 7429(a)(5) rulemakings. The Administrator's failures to
conduct the overdue rulemakings deny Plaintiff and its members the opportunity to inform the
development of the overdue federal implementation plans to seek greater health protections and
emissions reductions during review of the OSWI standards. Plaintiff's members are being denied
the opportunity to have EPA consider and respond to such comments in taking the final actions

required by § 7429(b)(3) and § 7429(a)(5). Deprivation of the ability to present comments and arguments and have them considered and addressed by EPA impairs Plaintiff and its members' ability to serve and protect their interests and fulfill their organizational missions.

58.     Failure to promulgate a final rule denies Plaintiff and its members of the opportunity to seek judicial review of that rule. *See* 42 U.S.C. § 7607(b). Deprivation of the right to judicial review harms the ability of Plaintiffs and their members to protect their interests and fulfill their organizational missions.

59.     The Administrator's failures to take the actions required by § 7429(b)(3) and § 7429(a)(5) deprive Plaintiff's members of the cleaner air that would result from those actions. Consequently, Defendant prolongs and increases Plaintiff's members' exposure to injurious air pollutants and the related and resulting health, recreational, aesthetic, and other injuries as described above. Defendant also prolongs and increases the hazardous air pollutant exposure of wildlife, plant, water, land, local communities, and ecosystems, resulting in harm to Plaintiff's members' interests, as described above. Promulgating a federal implementation plan under § 7429(b)(3) would reduce these exposures, and would reduce the related health, recreational, aesthetic, and other harms suffered by Plaintiff's members. Reviewing and revising the OSWI standards, as required by § 7429(a)(5), would reduce Plaintiff's members exposures, especially from unlawfully exempted OSWI, and would reduce the related health, recreational, aesthetic, and other harms suffered by Plaintiff's members.

60.     Taking the actions required by § 7429(b)(3) and § 7429(a)(5) would provide Plaintiff and its members with the information described above. *See also* 42 U.S.C. § 7607(d)(3)-(6).

61.     Taking the actions required by § 7429(b)(3) and § 7429(a)(5) would provide Plaintiff and its members with the opportunity to seek judicial review of EPA's federal implementation plans and of revised OSWI standards.

62.     For all of the foregoing reasons, the failures complained of herein cause Plaintiff and its members' injuries for which they have no adequate remedy at law. Granting the requested relief would redress these injuries.

## CLAIMS FOR RELIEF

63.     The allegations of all foregoing paragraphs are hereby incorporated as if set forth fully herein.

### Violations of § 7429(b)(3) of the Clean Air Act

64.     The Administrator's ongoing failures to promulgate a federal implementation plan for CISWI units within two years of promulgating the 2011 CISWI standards, in accordance with 42 U.S.C. § 7429(b)(3), constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary" within the meaning of § 7604(a)(2) of the Clean Air Act for each such source category.

65.     The Administrator's ongoing failures to promulgate a federal implementation plan for OSWI units within two years of promulgating OSWI standards, in accordance with 42 U.S.C. § 7429(b)(3), constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary" within the meaning of § 7604(a)(2) of the Clean Air Act for each such source category.

66.     Each day the Administrator fails to take these legally required actions, Defendant commits new, additional, and ongoing violations of its duties under § 7429(b)(3).

<u>Violations of § 7429(a)(5) of the Clean Air Act</u>

67.     The Administrator's ongoing failure to review, and in accordance with §§ 7429 and 7411 of the Act revise, the OSWI standards not later than five years after promulgation of the standards and at five year intervals thereafter, as required by § 7429(a)(5), constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary" within the meaning of § 7604(a)(2) of the Clean Air Act for each such source category.

68.     Each day the Administrator fails to take this legally required action, Defendant commits new, additional, and ongoing violations of its duties under § 7429(a)(5).

## PRAYER FOR RELIEF

69.     WHEREFORE, Plaintiff respectfully requests that the Court:

(1)     Declare that the Defendant Administrator's failure to promulgate a federal implementation plan for CISWI under § 7429(b)(3) within two years of promulgating the 2011 CISWI standards constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of § 7604(a)(2);

(2)     Order the Defendant Administrator to promulgate a federal implementation plan for the 2011 CISWI standards pursuant to § 7429(b)(3) in accordance with an expeditious deadline specified by this Court;

(3)     Declare that the Defendant Administrator's failure to promulgate a federal implementation plan for OSWI under § 7429(b)(3) within two years of promulgating the OSWI standards constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of § 7604(a)(2);

(4)     Order the Defendant Administrator to promulgate a federal implementation plan for the OSWI standards pursuant to § 7429(b)(3) in accordance with an expeditious deadline specified by this Court;

(5)     Declare that the Defendant Administrator's failure to review and revise the OSWI standards no later than five years after promulgation and at five year intervals thereafter constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of § 7604(a)(2);

(6)     Order the Defendant Administrator to review, and in accordance with § 7429 and §7411 revise, the OSWI standards pursuant to § 7412(a)(5) in accordance with an expeditious deadline specified by this Court;

(7)     Retain jurisdiction to ensure compliance with this Court's decree;

(8)     Award Plaintiffs the costs of this action, including attorneys' fees; and

(9)     Grant such other relief as the Court deems just and proper.


DATED:        December 16, 2016              Respectfully Submitted,

/s/ Gordon Sommers
Gordon Sommers (D.C. Bar No. 1034060)
James S. Pew (D.C. Bar No. 448830)
Earthjustice
1625 Massachusetts Ave., NW, Suite 702
Washington, DC 20036
gsommers@earthjustice.org
jpew@earthjustice.org
Tel: 202-667-4500
Fax: 202-667-2356

*Attorneys for Sierra Club*