# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SIERRA CLUB,

               *Plaintiff,*

   v.

ANDREW WHEELER,

               *Defendant.*

Civil Action No. 16-2461 (TJK)

## <u>MEMORANDUM OPINION</u>

The Clean Air Act requires the Environmental Protection Agency ("EPA" or the "agency") to develop guidelines to regulate solid waste incinerators. It also provides a private right of action to sue EPA to enforce the law's statutory duties that are nondiscretionary. 42 U.S.C. § 7604(a)(2). Plaintiff Sierra Club brings this lawsuit to compel EPA to comply with three duties related to these guidelines that it asserts are nondiscretionary. Before the Court are the parties' cross-motions for summary judgment. ECF No. 12; ECF No. 13.[1] For the reasons explained below, the Court concludes that two of the duties at issue are not nondiscretionary. Therefore, they may not be enforced through the private right of action invoked by Sierra Club, and claims related to them must be dismissed for lack of subject matter jurisdiction. With respect to the third duty, which the parties agree is nondiscretionary, the Court will order a schedule that establishes deadlines for EPA's compliance that fall between those proposed by the parties. Thus, the Court will grant in part and deny in part Sierra Club's Motion for Summary

---

[1] In evaluating these motions, the Court considered all relevant filings including, but not limited to, the following: ECF No. 1 ("Compl."); ECF No. 10 ("Ans."); ECF No. 12 at 4-7 ("Pl.'s SoMF"); *id.* at 8-46 ("Pl.'s MSJ Br."); ECF No. 13-3 ("Def.'s SoMF"); ECF No. 13-4 ("Def.'s MSJ Br."); ECF No. 15 at 1-5 ("Pl.'s Resp. SoMF"); *id.* at 6-37 ("Pl.'s Opp."); ECF No. 17 ("Def.'s Reply"); ECF No. 17-1 ("Def.'s Am. SoMF"); ECF No. 18-2; ECF Nos. 19-23.

Judgment (ECF No. 12), and grant in part and deny in part Defendant's Cross-Motion for

Summary Judgment (ECF No. 13). The Court will also deny Sierra Club's Motion for Leave to

File a Surreply (ECF No. 18).

## I.    Background

### A.    Statutory Background

In 1963, Congress enacted the Clean Air Act ("CAA"), 42 U.S.C. § 7401, *et seq.*, "to

protect and enhance the quality of the Nation's air resources so as to promote the public health

and welfare and the productive capacity of its population." *Id.* § 7401(b)(1). Recognizing that

the law was "work[ing] poorly," S. Rep. No. 101-228, at 128 (1989), Congress passed the Clean

Air Act Amendments of 1990, creating an "aggressive regime of new control requirements" to

address air pollution problems. *Blue Ridge Envtl. Def. League v. Pruitt*, 261 F. Supp. 3d 53, 56

(D.D.C. 2017) (quoting *Cal. Cmtys. Against Toxics v. Pruitt*, 241 F. Supp. 3d 199, 200 (D.D.C.

2017)).

The 1990 amendments added Section 129 to the CAA. *Nat. Res. Def. Council*

*("NRDC") v. EPA*, 489 F.3d 1250, 1255 (D.C. Cir. 2007). Section 129 provides that the

Administrator of EPA (the "Administrator") "shall establish performance standards and other

requirements . . . for solid waste incineration units." 42 U.S.C. § 7429(a)(1)(A). A "solid waste

incineration unit" is defined, with qualifications not relevant here, as "a distinct operating unit of

any facility which combusts any solid waste material from commercial or industrial

establishments or the general public." *Id.* § 7429(g)(1).

Section 129 requires the Administrator to establish performance standards and other

requirements applicable to both (1) "commercial or industrial" solid waste incineration units

("CISWI" units) and (2) "other categories" of solid waste incineration units ("OSWI" units). *Id.*

§ 7429(a)(1)(D)-(E). These standards and other requirements include "guidelines . . . and other

requirements applicable to existing units" of both types of incinerators.  *Id.* § 7429(a)(1)(A); *see also id.* § 7429(b)(1).  Once the Administrator promulgates guidelines for existing units, the law requires that a plan be developed and implemented to enforce them.  Reflecting the CAA's "'core principle' of cooperative federalism," *Miss. Comm'n on Envtl. Quality v. EPA*, 790 F.3d 138, 156 (D.C. Cir. 2015) (quoting *EPA v. EME Homer City Generation, L.P.*, 134 S. Ct. 1584, 1602 n.14 (2014)), Section 129 establishes a framework that gives each state the opportunity to create a state implementation plan ("SIP" or "state plan") and, for those states that fail to do so, requires the federal government to create a federal implementation plan ("FIP" or "federal plan").  The relevant portion of the statute provides in full:

> (2) State plans
>
> Not later than 1 year after the Administrator promulgates guidelines for a category of solid waste incineration units, each State in which units in the category are operating shall submit to the Administrator a plan to implement and enforce the guidelines with respect to such units.  The State plan shall be at least as protective as the guidelines promulgated by the Administrator and shall provide that each unit subject to the guidelines shall be in compliance with all requirements of this section not later than 3 years after the State plan is approved by the Administrator but not later than 5 years after the guidelines were promulgated.  The Administrator shall approve or disapprove any State plan within 180 days of the submission, and if a plan is disapproved, the Administrator shall state the reasons for disapproval in writing. Any State may modify and resubmit a plan which has been disapproved by the Administrator.
>
> (3) Federal plan
>
> The Administrator shall develop, implement and enforce a plan for existing solid waste incineration units within any category located in any State which has not submitted an approvable plan under this subsection with respect to units in such category within 2 years after the date on which the Administrator promulgated the relevant guidelines.  Such plan shall assure that each unit subject to the plan is in compliance with all provisions of the guidelines not later than 5 years after the date the relevant guidelines are promulgated.

42 U.S.C. § 7429(b)(2)-(3).  If a state does not have any existing CISWI or OSWI units in its state, it must submit a "negative declaration" saying so to EPA.  *See* 40 C.F.R. § 60.2510 (CISWI); *id.* § 60.2982 (OSWI).

In addition, EPA must review and revise the performance standards and other requirements it promulgates under Section 129 every five years.  Specifically, Section 129 states that "[n]ot later than 5 years following the initial promulgation of any performance standards and other requirements . . . applicable to a category of solid waste incineration units, and at 5 year intervals thereafter, the Administrator shall review, and in accordance with [§§ 7429 and 7411], . . . revise such standards and requirements."  42 U.S.C. § 7429(a)(5).

Finally, the CAA includes a "citizen suit" provision, which authorizes any person to file suit "against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator."  *Id.* § 7604(a)(2).  The district court is authorized "to order the Administrator to perform such act or duty."  *Id.* § 7604(a).

## B.    Factual Background

The parties generally agree on the facts relevant to their dispute.  In short, EPA has promulgated guidelines for existing CISWI and OWSI units pursuant to Section 129; many states have failed to submit implementation plans or negative declarations to EPA; and EPA has not finalized corresponding federal implementation plans.  *See* Pl.'s SoMF; Def.'s SoMF; Pl.'s Resp. SoMF; Def.'s Am. SoMF.  Moreover, the parties agree that EPA has not reviewed and revised the 2005 OSWI Standards every five years, as required by law.  *See* Pl.'s MSJ Br. at 12; Def.'s MSJ Br. at 6, 9, 17; 42 U.S.C. § 7429(a)(5).

### 1. CISWI Standards

On February 7, 2013, EPA promulgated final amended emission standards for CISWI units (the "2013 CISWI Standards"). Commercial and Industrial Solid Waste Incineration Units: Reconsideration and Final Amendments; Non-Hazardous Secondary Materials That Are Solid Waste, 78 Fed. Reg. 9112 (Feb. 7, 2013); *see also* Pl.'s SoMF ¶ 4; Def.'s Am. SoMF ¶¶ 25-26.

In response to these standards, many states have failed to submit either an approvable SIP or a negative declaration to EPA. Pl.'s SoMF ¶ 5; Pl.'s MSJ Br. at 8 & n.2; Def.'s SoMF at 1. On January 11, 2017, the Administrator published for comment a proposed federal implementation plan for the 2013 CISWI Standards. Federal Plan Requirements for Commercial and Industrial Solid Waste Incineration Units, 82 Fed. Reg. 3554 (Jan. 11, 2017); Pl.'s SoMF ¶ 6. That FIP has not been finalized. *See* Compl. ¶ 46(c); Ans. ¶ 46(c). EPA asserts that it has been "forced to suspend its work on the proposed plan until March 2020 at the earliest" because it must comply with other court-ordered deadlines. Def.'s MSJ Br. at 5.

### 2. OSWI Standards

In 2005, EPA promulgated OSWI standards (the "2005 OSWI Standards"). Standards of Performance for New Stationary Sources and Emission Guidelines for Existing Sources: Other Solid Waste Incineration Units, 70 Fed. Reg. 74,870 (Dec. 16, 2005); Pl.'s SoMF ¶ 9. Similarly, some states have failed to submit either an approvable SIP or a negative declaration for these standards. Pl.'s SoMF ¶ 10; Pl.'s MSJ Br. at 11 & n.4; Def.'s SoMF at 1. In December 2006, EPA released for comment a FIP for these standards. Federal Plan Requirements for Other Solid Waste Incineration Units Constructed on or Before December 9, 2004, 71 Fed. Reg. 75,816 (Dec. 18, 2006). Again, however, EPA has not finalized that plan, which is now more than a decade old. Pl.'s MSJ Br. at 11-12; Def.'s MSJ Br. at 6. In addition, EPA has not reviewed and

revised the 2005 OSWI Standards every five years, as required by law. *See* Pl.'s MSJ Br. at 12; Def.'s MSJ Br. at 6, 9, 17; 42 U.S.C. § 7429(a)(5).

### C. Procedural Background

On December 16, 2016, Sierra Club filed the instant lawsuit under the CAA's "citizen suit" provision, which authorizes the district court to compel the Administrator to perform certain nondiscretionary acts or duties that he has failed to perform. *See* 42 U.S.C. § 7604(a).[2] The complaint alleges that EPA has failed to comply with three nondiscretionary duties under Section 129: to (1) develop, implement and enforce a federal implementation plan for the 2013 CISWI Standards; (2) develop, implement and enforce a federal implementation plan for the 2005 OSWI Standards; and (3) review and revise the 2005 OSWI Standards. *See* Compl. ¶ 1 (citing 42 U.S.C. § 7429(a)(5), (b)(3)). The complaint requests that the Court declare each of these failures a failure to perform a nondiscretionary act or duty within the meaning of § 7604(a)(2), and order EPA to comply with the law in accordance with "expeditious deadline[s] specified by this Court." *Id.* ¶ 69.

In September 2017, Sierra Club moved for summary judgment. ECF No. 12. In short, it argues that because the duties (and corresponding deadlines) it identified are "not discretionary," 42 U.S.C. § 7604(a)(2), the Court should order EPA to perform them. *See* Pl.'s MSJ Br. at 1, 31. Sierra Club proposes the following timeframes for compliance:

---

[2] The CAA also provides a private right of action to enforce "agency action unreasonably delayed." 42 U.S.C. § 7604(a). Sierra Club does not assert an "unreasonably delayed" claim here.

| Action | Deadline for Proposed Action | Deadline for Final Action |
|---|---|---|
| Create FIP for 2013 CISWI Standards | N/A | Promulgate final rule within six months |
| Create FIP for 2005 OSWI Standards | Issue new proposal within six months | Promulgate final rule within 12 months |
| Review and Revise 2005 OSWI Standards | Publish notice of proposed rulemaking within 18 months | Promulgate final rule within 24 months |

*See id.* at 28 tbl.A.

EPA then cross-moved for summary judgment. ECF No. 13. It advances two primary arguments. First, it argues that Section 129(b)(3) does not impose a nondiscretionary duty on EPA to finalize federal implementation plans for the 2013 CISWI Standards and the 2005 OSWI Standards. Def.'s MSJ Br. at 11-12. As such, it argues that this Court does not have subject matter jurisdiction over the two FIP claims because the United States has not waived its sovereign immunity from suit. *Id.* at 9-13. (As already noted, the agency does not dispute that it has a nondiscretionary duty to review and revise the 2005 OSWI Standards. *Id.* at 9.)

Second, EPA argues that for any deadlines the Court concludes are nondiscretionary, the agency cannot begin working to meet them until at least March 2020 because its efforts to meet other court-ordered deadlines have deprived it of sufficient resources. *Id.* at 13-16. Specifically, EPA points out that its Sector Policies and Programs Division ("SPPD"), which is responsible for these projects, is already working on 33 overdue "residual risk and technology rulemakings" ("RTRs"). *Id.* at 14-15 (citing ECF No. 13-4 at Ex. A ("Tsirigotis Aff.") ¶¶ 2, 4, 7, 12-13). The bulk of the deadlines for these projects "fall between March 2020 and June 2020," and SPPD has purportedly had to "shift all available personnel over to those projects to ensure that th[ose] deadlines can be met." *Id.* Moreover, since summary judgment briefing concluded in this case, Judge Kentaji Brown Jackson has ordered EPA to complete another nine RTRs in the next few

years. *See Cmty. In-Power & Dev. Ass'n, Inc. v. Pruitt*, 304 F. Supp. 3d 212, 225 (D.D.C. 2018). In addition to these RTRs, EPA asserts that SPPD is also responsible for meeting a number of other deadlines for projects mandated by the CAA or court order. Def.'s MSJ Br. at 15. In light of these other deadlines, EPA proposes that, if the Court agrees with Sierra Club that all the duties at issue under Section 129 are nondiscretionary, it should compel performance by the following dates:

| Action | Deadline for Proposed Action | Deadline for Final Action |
|---|---|---|
| Create FIP for 2013 CISWI Standards | N/A | Promulgate final rule by September 16, 2020 |
| Create FIP for 2005 OSWI Standards | Issue new proposal by March 16, 2021 | Promulgate final rule by January 11, 2022 |
| Review and Revise 2005 OSWI Standards | Publish notice of proposed rulemaking by September 16, 2021 | Promulgate final rule by September 15, 2022 |

*See* Def.'s MSJ Br. at 16-17; Tsirigotis Aff. ¶ 8.

After the cross-motions for summary judgment were fully briefed, Sierra Club filed two documents styled as "Notice[s] of Additional Evidence," claiming that EPA as a whole and SPPD in particular are undertaking a number of nondiscretionary activities that belie EPA's claims that it does not have sufficient resources available to meet Sierra Club's proposed deadlines. *See* ECF Nos. 21, 23.

On July 17, 2018, the Court held oral argument on parties' dispositive motions.

## II.     Legal Standard

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The law presumes that "a cause lies outside [the Court's] limited jurisdiction" unless the party asserting jurisdiction establishes otherwise. *Id.* "[C]ourts

. . . have an independent obligation to determine whether subject-matter jurisdiction exists . . . ." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006).

Under Rule 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016). Courts "are not to make credibility determinations or weigh the evidence." *Id.* (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). "The movant bears the initial burden of demonstrating that there is no genuine issue of material fact." *Montgomery v. Risen*, 875 F.3d 709, 713 (D.C. Cir. 2017). "In response, the non-movant must identify specific facts in the record to demonstrate the existence of a genuine issue." *Id.*

## III. Analysis

This case requires the Court to: (1) decide whether Section 129(b)(3) of the CAA imposes nondiscretionary duties on the Administrator to finalize federal implementation plans for the 2013 CISWI Standards and the 2005 OSWI Standards, such that the Court has subject matter jurisdiction; and (2) establish appropriate deadlines for EPA's compliance with any duties imposed by Section 129 that the Court determines are nondiscretionary, and for which the CAA's deadlines have passed. The Court concludes that the two duties referenced above are not nondiscretionary, and Sierra Club's claims based on those duties must be dismissed for lack of

subject matter jurisdiction. The Court will also establish a schedule for compliance with the EPA's duty to review and revise the 2005 OSWI Standards, which the parties agree is nondiscretionary, as set forth below.

A.     **Whether Section 129(b)(3) Imposes a Nondiscretionary Two-Year Deadline for EPA's Federal Implementation Plans, Thereby Providing this Court Subject Matter Jurisdiction**

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Here, Sierra Club relies on the "citizen suit provision of the Clean Air Act as the waiver of sovereign immunity and the source of this Court's jurisdiction." *Friends of the Earth v. EPA*, 934 F. Supp. 2d 40, 46 (D.D.C. 2013) (citation omitted). This provision authorizes private plaintiffs to sue the Administrator for "failure . . . to perform any act or duty under this chapter which is not discretionary with the Administrator." 42 U.S.C. § 7604(a)(2). "The court has jurisdiction only if the EPA has failed to fulfill a nondiscretionary duty." *Defs. of Wildlife v. Jackson*, 284 F.R.D. 1, 4 (D.D.C. 2012) (citing *Sierra Club v. EPA*, 475 F. Supp. 2d 29, 31 (D.D.C. 2007)), *aff'd in part, appeal dismissed in part*, 714 F.3d 1317 (D.C. Cir. 2013).[3]

The D.C. Circuit has held that "[i]n order to impose a clear-cut nondiscretionary duty, . . . a duty of timeliness must 'categorically mandat[e]' that *all* specified action be taken by a date-certain deadline." *Thomas*, 828 F.2d at 791 (second alteration in original). The CAA "imposes

---

[3] As EPA notes, waivers of sovereign immunity must be construed narrowly. *See, e.g.*, *Lane v. Pena*, 518 U.S. 187, 192, 195 (1996). In this case, "the Court must construe the waiver provision in [42 U.S.C. § 7604(a)] narrowly, but not the substantive provision in the Clean Air Act that outlines the agency's duties." *Friends of the Earth*, 934 F. Supp. 2d at 47 n.1. D.C. Circuit precedent already effectively incorporates this axiom by requiring that a nondiscretionary duty under this waiver provision be "clear-cut" and "categorically mandate" that "all specified action" be taken by a "date-certain" deadline. *Sierra Club v. Thomas*, 828 F.2d 783, 791 (D.C. Cir. 1987), *superseded by statute on other grounds as recognized in Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 553 n.6 (D.C. Cir. 2015). Otherwise, it has little bearing on the Court's analysis.

'a nondiscretionary duty . . . only when [its] provision[s] set[] bright-line, date-specific deadlines for specified action.'" *Defs. of Wildlife*, 284 F.R.D. at 4 (alterations in original) (quoting *Raymond Proffitt Found. v. EPA*, 930 F. Supp. 1088, 1098 (E.D. Pa. 1996)). "A nondiscretionary duty must be 'clear-cut' in addition to being mandatory." *City of Dover v. EPA*, 956 F. Supp. 2d 272, 282 (D.D.C.) (citing *Thomas*, 828 F.2d at 791), *reconsidered in part on other grounds*, 40 F. Supp. 3d 1 (D.D.C. 2013). And "it is highly improbable that a deadline will ever be nondiscretionary, i.e. clear-cut, if it exists only by reason of an inference drawn from the overall statutory framework." *Thomas*, 828 F.2d at 791.

Here, the parties differ about whether the following language in the CAA—which governs the federal implementation plans for CISWI and OSWI standards—creates a clear-cut, nondiscretionary duty for EPA to finalize such a plan:

> The Administrator shall develop, implement and enforce a plan for existing solid waste incineration units within any category located in any State which has not submitted an approvable plan under this subsection with respect to units in such category *within 2 years after the date on which the Administrator promulgated the relevant guidelines*. Such plan shall assure that each unit subject to the plan is in compliance with all provisions of the guidelines not later than 5 years after the date the relevant guidelines are promulgated.

42 U.S.C. § 7429(b)(3) (emphasis added).

In Sierra Club's view, the statute requires the Administrator to "develop, implement and enforce" a federal implementation plan "within 2 years" after EPA promulgates the relevant guidelines. *See* Pl.'s MSJ Br. at 20-22; Pl.'s Opp. at 4-11. Thus, under its reading, the statute imposes a nondiscretionary, date-certain deadline for the FIP.

EPA interprets the statute differently. In its view, the phrase "within 2 years after the date on which the Administrator promulgated the relevant guidelines" modifies the phrase that directly precedes it: "within any category located in any State which has not submitted an

approvable plan under this subsection with respect to units in such category." *See* Def.'s MSJ Br. at 11-13. In other words, the statute requires that the Administrator "shall develop" a federal plan, and that plan must cover all units in those states that have not submitted an "approvable plan" within two years of EPA's promulgation of the relevant guidelines. *See id.* Under this reading, the statute does not establish a date-certain, nondiscretionary deadline to create a federal implementation plan because the statute simply says that the Administrator "shall develop" a plan—it does not say precisely when. Nonetheless, although the statute does not contain a date-certain deadline for developing the FIP, it *does* require that it "shall assure that each unit subject to the plan is in compliance with all provisions of the guidelines not later than 5 years after the date the relevant guidelines are promulgated." 42 U.S.C. § 7429(b)(3).

In the Court's judgment, EPA has the better of the argument. "As in all statutory construction cases, [the Court] begin[s] with the language of the statute." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). An important tool of statutory construction, the rule of last antecedent, helps tips the scale in EPA's favor. This rule is "one of the simplest canons of statutory construction." *United States v. Pritchett*, 470 F.2d 455, 459 n.9 (D.C. Cir. 1972) (quoting *United States ex rel. Santarelli v. Hughes*, 116 F.2d 613, 616 (3d Cir. 1940)). It provides that "a limiting clause or phrase . . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). Under this rule, the phrase "within 2 years after the date on which the Administrator promulgated the relevant guidelines" modifies the phrase that immediately precedes it. Thus, Section 129(b)(3) provides that the Administrator "shall develop, implement and enforce" a plan only for those incinerators located in states that do not submit an "approvable plan" within two years.

12

Read this way, the statute does not impose a "clear-cut," "categorical[]," "date-certain" deadline to develop a federal plan. *Thomas*, 828 F.2d at 791.

To be sure, the rule of last antecedent "is not an absolute and can assuredly be overcome by other indicia of meaning." *Hays v. Sebelius*, 589 F.3d 1279, 1281 (D.C. Cir. 2009) (quoting *Barnhart*, 540 U.S. at 26). But other provisions of the statute—in particular, the timing of the process by which states may resubmit revised state implementation plans to EPA—support EPA's reading, as opposed to Sierra Club's. Section 129 provides that after a state submits its implementation plan—which each state must do not later than one year after EPA promulgates the relevant guidelines—the Administrator must provide a written decision on that plan within 180 days; then, the state is permitted to "modify and resubmit a plan which has been disapproved." 42 U.S.C. § 7429(b)(2). Thus, the statute allows for the possibility that two years after the promulgation date, a state may have only recently resubmitted a modified plan for EPA's approval. In light of that possibility, it would be surprising for Section 129 to mandate that the Administrator "develop, implement *and enforce*" a federal implementation plan, all within two years of the date the guidelines were promulgated. *Id.* § 7429(b)(3) (emphasis added). That would hardly provide the states sufficient opportunity to develop their own plans, as the statute allows. And at that point, under the process set forth in the statute, EPA might well not even know the set of states that would need to be covered by the federal plan. In contrast, even assuming the Administrator did not make a decision on each revised state plan that had been resubmitted until sometime after the two-year mark, he *would* be able to retroactively determine which states had submitted "approvable" plans by then, as EPA's reading would require.

Sierra Club nonetheless argues that the purpose and overall structure of the statute suggest that it imposes a nondiscretionary two-year deadline on the agency to finalize a federal implementation plan. But none of its arguments carry the day.

First, Sierra Club argues that Section 129's general purpose of reducing pollution from incinerators is better served by reading the statute to require EPA to create a "backstop" within two years of the promulgation of the relevant guidelines for states that do not create an implementation plan. Pl.'s Opp. at 5. But "[t]he task of statutory interpretation cannot be reduced to a mechanical choice in which the interpretation that would advance the statute's general purposes to a greater extent must always prevail . . . ." *United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 495 (D.C. Cir. 2004). And in any event, as EPA acknowledged at oral argument, even under its reading, the agency is required to produce a federal implementation plan that would assure every incineration unit subject to it is in compliance within five years after it promulgated the relevant guidelines. *See* 42 U.S.C. § 7429(b)(3). Therefore, the ultimate deadline for pollution reduction under the law would be the same under either party's interpretation.

Next, Sierra Club argues that, because Section 129(b)(2) provides that incinerators subject to state implementation plans have three years to come into compliance, its interpretation makes sense insofar as it would give incinerators subject to the federal implementation plan the same three years to do so. Pl.'s Opp. at 5. But Sierra Club mischaracterizes the statute's requirements for state plans. Section 129(b)(2) provides that a state plan "shall provide that each unit subject to the guidelines shall be in compliance . . . not later than 3 years after the State plan is approved by the Administrator *but not later than 5 years after the guidelines were promulgated*." 42 U.S.C. § 7429(b)(2) (emphasis added). Therefore, the statute contemplates

that incinerators subject to a state plan may have to achieve compliance in less than three years. For instance, if a state implementation plan were approved three years after the guidelines were promulgated, incinerators subject to that plan would have only two years to do so. Thus, EPA's interpretation of the statute, which could require incinerators subject to a federal implementation plan to come into compliance in less than three years, is entirely consistent with the state implementation plan regime. Moreover, that this provision implicitly anticipates that EPA may approve state implementation plans more than two years after it promulgates the relevant guidelines further undermines Sierra Club's argument that the statute requires the Administrator to completely "develop, implement and enforce" a federal implementation plan by that same date.

Sierra Club also argues that EPA's interpretation of the statute would lead to "absurd results" because EPA could promulgate a federal plan one day before the five-year deadline, making it impossible for incinerators subject to that plan to be compliance in a timely manner. Pl.'s Opp. at 7-8. But EPA's reading would not result in an absurdity, when the relevant provisions are considered together in their entirety. As already explained, even under EPA's interpretation, a federal implementation plan must still "assure that each unit subject to the plan is in compliance with all provisions of the guidelines not later than 5 years after the date the relevant guidelines are promulgated." 42 U.S.C. § 7429(b)(3). If, as in Sierra Club's hypothetical, EPA released a federal plan the day before the five-year deadline, that would hardly seem to fulfill that statutory mandate.

Next, Sierra Club argues that EPA previously endorsed its preferred reading of the statute. Specifically, it points to a number of instances where EPA has, in a rulemaking, described Section 129 as requiring it to finalize a FIP within two years. Pl.'s Opp. at 9-10 (citing

68 Fed. Reg. 57,518, 57,518 (Oct. 3, 2003); 81 Fed. Reg. 26,040, 26,041 (Apr. 29, 2016); 82

Fed. Reg. 3554, 3556-57 (Jan. 11, 2017)).  Sierra Club then attempts to leverage the language in

these rulemakings in two different ways.  At times, it argues that that these prior statements mean

that EPA should not receive *Chevron* deference for the interpretation of the statute it advances in

its motion papers.  *See, e.g.*, Pl.'s Opp. at 9-10.  But EPA admits that it "has neither presented

nor sought deference for an [a]gency construction of CAA section 7429(b)(3)."  Def.'s Reply at

8.  Because EPA has not argued that its current interpretation receives *Chevron* deference, the

Court need not consider such an argument.

At other times, Sierra Club argues that EPA's prior statements in the Federal Register

should themselves be entitled to *Chevron* deference.  Pl.'s Opp. at 9 ("The only interpretation of

§ 7429(b) that deserves deference is the one EPA has advanced in its past rulemakings, which is

the one Sierra Club now seeks to enforce.").  But on the record here, EPA's statements in the

Federal Register are not entitled to such deference.  "For *Chevron* to govern, the agency must

have 'acted pursuant to congressionally delegated authority to make law *and with the intent to*

*act with the force of law*.'"  *Amgen Inc. v. Hargan*, 285 F. Supp. 3d 351, 365 (D.D.C. 2018)

(emphasis added) (quoting *Safari Club Int'l v. Zinke*, 878 F.3d 316, 326 (D.C. Cir. 2017)).

"[P]ublication in the federal register is not in itself sufficient to constitute an agency's intent that

its pronouncement have the force of law . . . ."  *Citizens Exposing Truth About Casinos v.*

*Kempthorne*, 492 F.3d 460, 467 (D.C. Cir. 2007).  Only when that publication "reflects a

deliberating agency's self-binding choice, as well as a declaration of policy," is it "evidence of a

*Chevron*-worthy interpretation."  *Id*.  Here, the agency statements that Sierra Club cites were

merely made in passing.  *See* 68 Fed. Reg. at 57,518, 57,522; 81 Fed. Reg. at 26,041, 26,044; 82

Fed. Reg. at 3556-57.  These brief, informal statements hardly reflect a "self-binding choice" by the agency or a "declaration of policy."  *Kempthorne*, 492 F.3d at 467.[4]

Finally, even if these statements did have the force of law, Sierra Club has still failed to demonstrate that they would be entitled to *Chevron* deference.  "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."  *Chevron*, 467 U.S. at 843 n.9.  Here, the last antecedent rule, a "grammatical rule that has also become a [canon] of statutory construction," *Bellino v. JPMorgan Chase Bank, N.A.*, No. 14-cv-3139, 2015 WL 4006242, at *4 (S.D.N.Y. June 29, 2015), was "more than up to the job of solving today's interpretive puzzle," *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1630 (2018).  And, as discussed, the conclusion to which it points is consistent with other provisions of the statute that establish a timeline for states to resubmit their state implementation plans to EPA for approval, 42 U.S.C. § 7429(b)(2).

---

[4] Sierra Club also argues 40 C.F.R. § 60.27(c)-(d) supports its reading of Section 129.  Pl.'s Opp. at 10-11.  But as Sierra Club acknowledges, 40 C.F.R. § 60.27 was promulgated to implement a different section of the Clean Air Act.  *See* 40 Fed. Reg. 53,339, 53,340 (Nov. 17, 1975) (implementing CAA Section 111).  That is clear from the text of the regulation, which includes a number of deadlines inconsistent with Section 129(b).  For instance, 40 C.F.R. § 60.27(b) says the Administrator will approve or disapprove a state plan within four months.  By contrast, Section 129(b)(2) gives the Administrator six months to respond to initial plans submitted by the states.  *See* 42 U.S.C. § 7429(b)(2).  Thus, this regulation has no bearing on the proper interpretation of Section 129.  Sierra Club also suggests that, regardless of the text of the regulation, EPA has adopted the position that it sheds light on the meaning of Section 129.  Pl.'s Opp. at 11 (citing 81 Fed. Reg. at 26,041; 82 Fed. Reg. at 3556-57).  This argument fails for two reasons.  First, the reference to 40 C.F.R. § 60.27(c)-(d) in these Federal Register notices is best understood as referencing the section it pertains to, Section 111, not Section 129.  Second, as explained below, the meaning of Section 129 can be determined using "traditional tools of statutory construction," *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 843 n.9 (1984), so there is no need to resort to whether EPA has purportedly interpreted Section 129 through a regulation implementing a different section of the CAA.

In sum, when analyzed using traditional tools of statutory interpretation, the statute does not establish a two-year deadline for EPA to "develop, implement and enforce" FIPs, let alone one that is "clear-cut." Therefore, Sierra Club has not shown that the statute creates a nondiscretionary duty as required by the citizen suit provision, 42 U.S.C. § 7604(a), and the Court must dismiss these claims for lack of subject matter jurisdiction. *Defs. of Wildlife*, 284 F.R.D. at 4.[5]

## B. EPA's Compliance Deadline for Reviewing and Revising its 2005 OSWI Standards

Having determined that Section 129(b) does not create a nondiscretionary duty on EPA to create federal implementation plans for the 2013 CISWI or 2005 OSWI Standards, the Court turns to Section 129's requirement to review and revise the 2005 OSWI Standards. The parties agree that 42 U.S.C. § 7429(a)(5) creates a date-certain, nondiscretionary duty that, every 5 years, "the Administrator shall review[] and . . . revise such standards and requirements." The

---

[5] Sierra Club argues that even if the CAA does not provide this Court subject matter jurisdiction, the Administrative Procedure Act provides an alternative basis for jurisdiction. *See* Pl.'s Opp. at 3-4 & n.2. As an initial matter, because Sierra Club raised this argument in its opposition to EPA's motion for summary judgment, *id.*, the Court will deny Sierra Club's motion for leave to file a surreply, ECF No. 18. A "surreply is not a vehicle for rehashing arguments that have already been raised and briefed by the parties." *Crummey v. Soc. Sec. Admin.*, 794 F. Supp. 2d 46, 63 (D.D.C. 2011), *aff'd*, No. 11-5231, 2012 WL 556317 (D.C. Cir. Feb. 6, 2012). Turning to the argument itself, there is no doubt that "[t]he APA's waiver of sovereign immunity applies to any suit whether under the APA or not." *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996). But the waiver provision in the APA is explicitly limited. It does not "affect[] other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground." 5 U.S.C. § 702. Nor does it "confer[] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.* Thus, the APA's waiver provision "does not provide a back door for plaintiffs to raise claims *pursuant* to other statutes . . . which disallow such claims." *All. to Save Mattaponi v. U.S. Army Corps of Eng'rs*, 515 F. Supp. 2d 1, 6 n.3 (D.D.C. 2007). Because the Court concludes that Section 129(b)(3) of the CAA does not create a nondiscretionary duty on EPA to implement a FIP, and therefore, the CAA does not provide subject matter jurisdiction for this Court to hear claims based on this alleged duty, Sierra Club cannot rely on the APA as an alternative vehicle to provide subject matter jurisdiction in this case. *Friends of the Earth*, 934 F. Supp. 2d at 46-47.

parties also agree that EPA has failed to comply with that duty for the 2005 OSWI Standards. Pl.'s MSJ Br. at 12; Def.'s MSJ at 6, 9, 17. Thus, the Court must establish the appropriate deadline for compliance.

The CAA "empowers district courts to 'order [the EPA] to perform' a mandated act or duty and to 'compel [non-discretionary] agency action unreasonably delayed[.]'" *Cmty. In-Power & Dev. Ass'n, Inc. v. Pruitt*, 304 F. Supp. 3d 212, 219 (D.D.C. 2018) (alterations in original) (quoting 42 U.S.C. § 7604(a)). "The D.C. Circuit has held that this provision permits district courts to exercise their equity powers 'to set enforceable deadlines both of an ultimate and an intermediate nature.'" *Blue Ridge Envtl. Def. League v. Pruitt*, 261 F. Supp. 3d 53, 59 (D.D.C. 2017) (quoting *NRDC v. Train*, 510 F.2d 692, 705 (D.C. Cir. 1974)). "While district courts have broad discretion to set deadlines for compliance, '[t]he sound discretion of an equity court does not embrace enforcement through contempt of a party's duty to comply with an order that calls him to do an impossibility.'" *Id.* (quoting *Train*, 510 F.2d at 713). "But an agency has a 'heavy burden to demonstrate' that the ordered requirements are impossible to meet, or that it is unable to comply with a particular remedial timeline." *Cmty. In-Power*, 304 F. Supp. 3d at 219 (quoting *Ala. Power Co. v. Costle*, 636 F.2d 323, 359 (D.C. Cir. 1979)). "That burden is especially heavy where 'the agency has failed to demonstrate any diligence whatever in discharging its statutory duty to promulgate regulations and has in fact ignored that duty for several years.'" *Sierra Club v. Johnson*, 444 F. Supp. 2d 46, 53 (D.D.C. 2006) (quoting *Sierra Club v. Thomas*, 658 F. Supp. 165, 172 (N.D. Cal. 1987)). Indeed, "the district court must scrutinize carefully claims of impossibility, and 'separate justifications grounded in the purposes of the Act from the footdragging efforts of a delinquent agency.'" *Id.* (quoting *Train*, 510 F.2d at 713).

On the other hand, "[n]otwithstanding the heavy burden that an agency bears to prove its inability to comply with deadlines imposed by a statute that mandates certain agency obligations, . . . a court must be mindful of the 'budgetary commitments and manpower demands [that are] required[,]' and thus avoid imposing deadlines that 'are beyond the agency's capacity or would unduly jeopardize the implementation of other essential programs.'" *Cmty. In-Power*, 304 F. Supp. 3d at 220 (alterations, except first, in original) (quoting *Train*, 510 F.2d at 712).

Here, the Court must determine the timeline on which it will order EPA to review and revise the 2005 OSWI Standards. The parties have similar views on how long that process should take, once it is begun. Both agree a timeframe of 18 months is appropriate to publish a proposed notice of rulemaking. *See* Pl.'s MSJ Br. at 28 tbl.A; Def.'s MSJ Br. at 16-17; Tsirigotis Aff. ¶ 8. And while Sierra Club argues a final rule can be implemented six months after the proposed rule (for a total of 24 months), EPA argues it will need 12 months (for a total of 30 months). Pl.'s MSJ Br. at 28 tbl.A; Def.'s MSJ Br. at 16-17; Tsirigotis Aff. ¶ 8. Of the extra six months that EPA estimates that it will need to finalize the rule, three are devoted to OMB review. Pl.'s Opp. at 20 (citing Tsirigotis Aff. ¶ 21(f)). But as discussed at oral argument, the parties agree that OMB review is not legally required to review and revise the 2005 OWSI Standards.

The primary disagreement between the parties, then, is not the time it will take to complete the required rulemaking, but when work on that rulemaking should begin. Sierra Club argues it should begin as of the date of this Opinion, whereas EPA argues that it cannot begin to work on it until March 2020. *See* Pl.'s MSJ Br. at 28 tbl.A; Def.'s MSJ Br. at 16-17.

The Court concludes that EPA has failed to demonstrate that it would be "impossible" to begin working on this project until March 2020. The Court is well aware that EPA, and in

particular SPPD, is currently obligated to comply with a number of court-ordered deadlines, most notably the outstanding RTRs. *See, e.g.*, *Cmty. In-Power*, 304 F. Supp. 3d at 225; *Blue Ridge Envtl.*, 261 F. Supp. 3d 53 at 62; *Cal. Cmtys.*, 241 F. Supp. 3d at 207. But the Court nevertheless rejects its claim that it cannot begin work until March 2020 for a number of reasons. First, by the agency's own admission, there are some SPPD resources currently committed to tasks such as responding to FOIA requests and "stakeholder outreach" that, in the Court's view, could be deployed to assist with reviewing and revising the 2005 OSWI Standards. *See* Tsirigotis Aff. ¶ 15. Second, Sierra Club has presented significant evidence that EPA, including SPPD, is engaging in a number of other discretionary activities. *See* Pl.'s Opp. at 13-16; ECF No. 21; ECF No. 23. Again, resources being allocated to these efforts could be devoted to reviewing and revising the 2005 OSWI Standards. Third, the Court agrees with Sierra Club that EPA could detail employees from other divisions to SPPD (or potentially hire contractors) to help meet these deadlines. *See* Pl.'s Opp. at 16-18. "[S]hifting resources in response to statutory requirements and court orders is commonplace for EPA." *Sierra Club*, 444 F. Supp. 2d at 54 (citation omitted). And while employees new to SPPD may not have as much expertise or experience as permanent SPPD staff, their assistance could nevertheless help.

At the same time, although "this Court will not accede to the agency's proposed timeline, . . . it will also reject the impossibly compressed deadlines that Plaintiff[] suggest[s]." *Cmty. In-Power*, 304 F. Supp. 3d at 225. "[C]ourts should not demand a deadline for agency compliance that is impossible or infeasible." *Sierra Club v. McCarthy*, No. 15-cv-1165, 2016 WL 1055120, at *3 (N.D. Cal. Mar. 15, 2016). In light of all of the ongoing court-ordered deadlines that SPPD is responsible for meeting between now and 2020, the Court concludes that it would be

impossible for EPA to review and revise the 2005 OSWI Standards beginning immediately, on the timeframe Sierra Club requested.

Instead, the Court will order EPA to begin work on the proposed rulemaking for reviewing and revising the 2005 OSWI Standards on March 1, 2019. As in *Community In-Power*, where Judge Jackson did not order the agency to begin the overdue rulemaking immediately, 304 F. Supp. 3d at 225, this window will give the agency time to properly plan the execution of this project. The Court will also require EPA to publish a notice of a proposed rulemaking by August 31, 2020, 18 months from the start of the project. And last, the Court will order EPA to promulgate a final rule by May 31, 2021, 27 months from the start of the project. Although the "Court defers to the agency's assessment of the technical nuances involved in promulgating these . . . rules," *Blue Ridge Envtl.*, 261 F. Supp. 3d at 60, it concludes that the three months EPA has budgeted for OMB review should be excluded from the time allotted to complete the final rule. OMB reviews are "completely discretionary," *Cmty. In-Power*, 304 F. Supp. 3d at 223, notwithstanding the fact that they may well be good policy in circumstances when EPA is not so far behind schedule in meeting its obligations under the law.

## IV.    Conclusion

For all of the above reasons, the Court will, in a separate Order, dismiss for lack of subject matter jurisdiction Sierra Club's claims that 42 U.S.C. § 7429(b)(3) imposes nondiscretionary duties on EPA to "develop, implement and enforce" federal implementation plans for the 2013 CISWI Standards and the 2005 OSWI Standards; and will otherwise, consistent with this Opinion, grant in part and deny in part Plaintiff's Motion for Summary

Judgment, ECF No. 12; grant in part and deny in part Defendant's Motion for Summary

Judgment, ECF No. 13; and deny Plaintiff's Motion for Leave to File a Surreply, ECF No. 18.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 14, 2018